**GOVERNMENT EMPLOYEES CREDIT UNION OF SAN ANTONIO, Appellant,**

v.

**FUJI PHOTO FILM U.S.A., INC., Appellee.**

No. 04-85-00153-CV.

Court of Appeals of Texas, San Antonio.

May 21, 1986.

Rehearing Denied July 2, 1986.

Larry D. Brockman, Universal City, for appellant.

W.R. Simcock, Andy Tschope, Cox & Smith, San Antonio, William B. Hardie, Jr., El Paso, for appellee.

Before ESQUIVEL, CANTU and REEVES, JJ.

## OPINION

ESQUIVEL, Justice.

This is an appeal from an order granting a motion for partial summary judgment urged by the appellee, Fuji Photo Film U.S.A., Inc. (Fuji), against the appellant, Government Employees Credit Union of San Antonio (GECU). GECU filed its original petition complaining of the misrepresentation by Fuji and Mino-Micro-Graphics, another defendant below, regarding their capacity to convert GECU record files to microfilm. GECU brought its cause of action for breach of contract and for breach of express and implied warranties pursuant to Deceptive Trade Practices—Consumer Protection Act, ch. 143, § 1, 1973 Tex.Gen. Laws, *amended by* Act of Aug. 27, 1979, ch. 603, § 4, 1979 Tex.Gen.Laws 1329 (hereinafter referred to as 1979 DTPA). Fuji filed its original answer and made a request for admissions to GECU. In the reply to Fuji's request for admissions, GECU admitted the following:

1. GECU has assets of $25 million or more, or is owned or controlled by a corporation or entity with assets of $25 million or more.

2. The goods and services, which are the subject of this suit, were purchased by GECU for a commercial or business use.

3. GECU is an association chartered as a state chartered credit union.

Fuji then moved for a partial summary judgment regarding GECU's claims under the DTPA which was granted by the trial court. The order granting partial summary judgment against GECU was severed from other causes by the trial court.

GECU brings a single point of error on appeal:

The trial court committed error in granting Fuji's motion for partial summary judgment for the reason that GECU is a consumer and therefore has standing to urge a claim under the 1979 DTPA.

Fuji also urges a procedural argument. We will first consider Fuji's argument.

Fuji alleges that GECU may only argue on appeal those arguments which are supported by its summary judgment evidence and that are particularly raised in GECU's response to Fuji's motion for partial summary judgment. Since GECU's response to Fuji's motion are pleadings, which are not considered summary judgment evidence, Fuji alleges that GECU presented no summary judgment evidence. As such, Fuji maintains that the basic issues raised by GECU in its brief, and central to the controversy between the parties, should be disregarded.

■■■ Pleadings do not constitute summary judgment proof. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979); *Hidalgo v. Surety Savings & Loan Association*, 462 S.W.2d 540, 545 (Tex.1971). The new rule requires that contentions be expressly presented in the written motion or in a written answer or response to the motion, and pleadings are not to be considered in determining whether fact issues are expressly presented in summary judgment motions. *City of Houston*, 589 S.W.2d at 678; TEX.R. CIV.P. 166–A(c). The movant still must establish his entitlement to a summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of his cause of action or

defense as a matter of law. *City of Houston*, 589 S.W.2d at 678; *see Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). As such, we must look to the evidence presented to the trial court.

■■■ GECU filed a written response to Fuji's motion for summary judgment. Therefore, the only summary judgment proceedings before this court are the written motion filed by Fuji, the written response filed by GECU, and the answers by GECU to requested admissions sought by Fuji. A review of a ruling granting a motion for summary judgment will be made only on the record that was presented before the trial court at the time of said hearing, and not on matters outside the record. *Richman Trusts v. Kutner*, 504 S.W.2d 539, 541 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.); *Superior Stationers Corp. v. Berol Corporation*, 483 S.W.2d 857, 860–61 (Tex.Civ.App.—Houston [1st Dist.] 1972, no writ). As such, Fuji's contention is well taken but not determinative.

A question arises as to which version of the DTPA is applicable to the cause of action at bar. GECU argues that we are guided by the provisions of the DTPA in effect at the time the contract in question was executed by the parties.[1] GECU has read the savings language located in the 1983 amendment to the DTPA as justifying the inapplicability of the 1983 amendment and the resultant applicability of the 1979 version of the DTPA to the 1981 contract it executed with Fuji. As a result of this reading, the language limiting the waiver of DTPA rights by a consumer and the language excepting business consumers from maintaining suits under the DTPA would be inapplicable to this cause.[2] Fuji

---

**1.** We note this language from the 1983 amendment of the DTPA:

This Act applies only to the contract executed on or after the effective date of this Act. *A contract executed before the effective date of this Act is governed by the law in effect when the contract was executed.* [Emphasis added]. [Effective date of the 1983 Act is August 29, 1983].

TEX.BUS. & COM.CODE ANN. § 17.45 (Vernon Supp.1986).

**2.** The 1979 version of the DTPA did not contain subdivision (10) which defined business consumers or language located in subdivision (4) eliminating business consumers with assets of $25 million or more from the class of consumers which may maintain suits under the DTPA. Texas Deceptive Trade Practices—Consumer Protection Act, ch. 143, § 1, 1973 Tex.Gen.Laws 323.

contends that the 1983 amendment to the DTPA applies to this cause because it is evident that the Legislature intended the savings language to pertain strictly to the contract waiver provisions in contracts executed prior to the effective date of the 1983 amendment and in no way refers to pending causes of action for business consumers with more than $25 million in assets. As such, Fuji maintains that any argument by GECU that the 1983 amendments are inapplicable is unfounded. We disagree with Fuji.

■ After reviewing the mandatory language of the 1983 amendment to the DTPA, we are unable to conclude that the Legislature expressly intended to limit the savings language of the 1983 DTPA amendment to circumstances involving waiver. Fuji cites no authority in support of this reading of the Act and the session laws do not indicate that such an interpretation was intended by the Legislature. Deceptive Trade Practices—Consumer Protection Act, ch. 883, § 2, 3, 1983 Tex.Gen. Laws 4944. We hold that the 1983 amendment to the DTPA does not apply to the cause at bar and we proceed under an application of the 1979 DTPA.

The question we must address is whether an association, doing business in the State of Texas as a state chartered credit union, is a consumer for purposes of maintaining a suit for breach of contract pursuant to the DTPA. Initially, we must decide what status a credit union possesses. The secondary issue is one of standing and must be decided prior to any discussion of the merits of GECU's lawsuit.

A credit union is governed by the Texas Credit Union Act. TEX.REV.CIV.STAT. ANN. art. 2461–1.01 et seq. (Vernon 1986).

The purpose of the Legislature's enactment of the Texas Credit Union Act was to provide a framework in which credit unions could effectively provide their financial services to the public:

The purposes of the legislature in enacting this Act are to safeguard the public interest, to promote public confidence in credit unions doing business in this state, to provide for the protection of the interests, shares, and deposits of credit unions, to delegate to the department rulemaking and discretionary authority that may be necessary to assure that credit unions operating under this Act may be sufficiently flexible and readily responsive to changes in economic conditions and practices, to maintain sound credit union growth and financial integrity, fiscal responsibility, and independent judgment in the management of the business affairs of credit unions, to permit credit unions to effectively provide a full array of financial and financially-related services, to provide effective supervision and regulation of credit unions, and to clarify and modernize the law governing the credit unions doing business in this state. It is also the intent of the legislature that this act be liberally construed to accomplish and effectuate these purposes. Therefore, this Act is declared to be the public policy of this state and necessary to the public welfare.

TEX.REV.CIV.STAT.ANN. art. 2461–1.05 (Vernon Supp.1986).

Given such a purpose, it is relevant to look at how credit unions were historically organized to operate.

Credit unions were originally defined as a cooperative association organized for the purpose of promoting thrift among its members and creating a source of credit for provident and productive purposes. TEX.REV.CIV.STAT.ANN. art. 2461 (Vernon 1965). At that time, credit unions were governed by the State Banking Board. The Banking Board was responsible for granting the corporate charter to the credit union for the commencement of business in Texas. TEX.REV.CIV.STAT. ANN. art. 2463 (Vernon 1965).

Currently, credit unions are not subject to the provisions of the Texas Banking Act. *Texas Bankers Association v. Government Employees Credit Union of San Antonio,* 625 S.W.2d 338, 341 (Tex.Civ.App.— San Antonio 1981, no writ). Even so, the Legislature enacted a series of amend-

ments to the Texas Credit Union Act which maintained the corporate character of credit unions.

Credit unions, as cooperative associations, are nonetheless nonprofit financial institutions:

(1) "Credit union," unless the context relates to a federal credit union, means a voluntary, cooperative, *nonprofit financial institution,* authorized to do business in this state under this Act for the purposes of encouraging thrift among its members, creating a source of credit at fair and reasonable rates of interest, providing an opportunity for its members to use and control their own money in order to improve their economic and social condition, and conducting any other business, engaging in any other activity, and providing any other service that may be of benefit to its members, subject to this Act and the rules adopted under this Act. [Emphasis added.]

TEX.REV.CIV.STAT.ANN. art. 2461–1.02 (Vernon Supp.1986). The Legislature was careful to define credit unions as nonprofit financial institutions and not as nonprofit corporations.

The Legislature has historically recognized credit unions and other cooperative credit associations as corporations with a variety of specific purposes expressly distinct from the purposes of nonprofit corporations. 15 TEX.JUR.3d *Corporations* § 495 (1981). Most nonprofit corporations are organized pursuant to the Nonprofit Corporation Act. TEX.REV.CIV.STAT. ANN. art. 1396–2.01 (Vernon 1980). However, the Legislature created exceptions to this method of organization:

\* \* \* \* \* \*

B. This Act shall not apply to *any corporation,* nor may any corporation be organized under this Act or obtain authority to conduct its affairs in this State under this Act:

\* \* \* \* \* \*

(3) If any one or more of its purposes for the conduct of its affairs in this State is to organize ... rural credit

unions ... cooperative credit associations....

TEX.REV.CIV.STAT.ANN. art. 1396–2.-01(B)(3) (Vernon 1980). (Emphasis added).

Nevertheless, in addition to having the power to make loans and investments, credit unions were granted the power to incorporate:

Ten (10) or more residents of this State may associate themselves together by articles of agreement and form a credit union and upon approval of the State Banking Board, may become a corporation upon complying with such provisions of the law regulating State banks as may be applicable to the transaction of business as herein authorized to be done. The State Banking Board may permit the formation of such corporation when it is satisfied that the proposed field of operation is favorable to the success of a credit union, and the standing of the proposed members is such as to give assurance that its affairs will be administered in accordance with the spirit of this Law, and said Board may investigate or cause to be investigated such matters when deemed by it necessary to assist it in its determination of such duties, the actual expenses of such investigation to be paid upon itemized statement thereof by the applicants for charter under this Law.

TEX.REV.CIV.STAT.ANN. art. 2463 (Vernon 1965).

With succeeding amendments, the Legislature defined the role of incorporators (art. 2461–2.01), the requirements for articles of incorporation (art. 2461–2.02), the incorporation procedure (art. 2461–2.03), the effect of issuing a certificate of incorporation (art. 2461–2.04) and numerous other organizational guidelines. TEX.REV. CIV.STAT.ANN. art. 2461–2.02—2.04 (Vernon Supp.1986). In enacting these amendments to the Texas Credit Union Act, the Legislature made it clear that the corporate character of credit unions is special. Furthermore, the corporate existence of a credit union begins at the time the commissioner issues a certificate of incorporation and the acceptance of the certificate is conclu-

sive evidence of the authorization of the credit union to do business as a corporation under this Act. TEX.REV.CIV.STAT. ANN. art. 2461–2.04 (Vernon Supp.1986).

Accordingly, we hold that the corporate character of a credit union, as authorized by the Texas Credit Union Act, is sufficient to consider the issue of its standing to sue pursuant to the Deceptive Trade Practices Act.

■ In order for any person to maintain a suit it is necessary that he have standing to litigate the matters in issue. *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984). Standing consists of some interest peculiar to the person individually and not as a member of the general public. *See Mitchell v. Dixon*, 140 Tex. 520, 168 S.W.2d 654, 656 (1943). This general rule of standing applies in all cases absent a statutory exception to the contrary. *Scott v. Board of Adjustment*, 405 S.W.2d 55, 56 (Tex. 1966). The DTPA provides us with just such an exception.

■ In specifying who is a person and who is a consumer, the 1979 amended version of the DTPA reveals the clear intent of the Legislature to define who has standing to sue for damages under the Act. It is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose. *Eddins-Walcher Butane Co. v. Calvert*, 156 Tex. 587, 298 S.W.2d 93, 96 (1957). Likewise, we believe every word excluded from a statute must also be presumed to have been excluded for a purpose. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex.1981). Only when it is necessary to give effect to the clear Legislative intent can we insert additional words or requirements into a statutory provision. *Mauzy v. Legislative Redistricting Board*, 471 S.W.2d 570, 573 (Tex.1971); *see Texas & N.O.R. Co. v. Railroad Commission*, 145 Tex. 541, 200 S.W.2d 626, 629 (1947).

A consumer is defined by the Texas Deceptive Trade Practices—Consumer Protection Act, ch. 143, § 1, 1973 Tex.Gen.Laws 323 *amended by* Act of Aug. 27, 1979, ch. 603, § 2, 1979 Tex.Gen.Laws 1327 (hereinafter referred to as 1979 DTPA), only in terms of a person's relationship to a transaction in goods or services. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 541 (Tex.1981). This definition does nothing more than describe the class of persons who can bring a suit for treble damages under DTPA. *Cameron*, 618 S.W.2d at 541.

■ GECU argues it is an association chartered as a state chartered credit union. GECU alleges that a state chartered credit union is the same as a corporation because TEX.REV.CIV.STAT.ANN. art. 2461–2.04 (Vernon Supp.1986) uses the words "corporation," or "incorporate" or "incorporation" on "no less than thirty-nine occasions." GECU concludes it has standing to sue as a corporation under the DTPA. We agree.

The pertinent definitions in effect at the time the cause of action arose include the following from the 1979 DTPA which remained unchanged until the 1983 amendments:

\* \* \* \* \* \*

(3) "Person" means an individual, partnership, corporation, association, or other group, however organized.

(4) "Consumer" means an individual, partnership, corporation, or governmental entity who seeks or acquires by purchase or lease, any goods or services.

\* \* \* \* \* \*

The Texas Supreme Court has addressed the issue of who is a consumer under the DTPA. In *Riverside National Bank v. Lewis*, 603 S.W.2d 169, 173 (Tex.1980), the court ruled that it is the statutory definition of *consumer* that delineates the class of persons that may maintain a private cause of action. In addition, the rule of liberal interpretation should not be applied in a manner that negates the statutory definition of the word "consumer." *Id.* To redefine the Legislature's definition of "consumer," and permit any aggrieved person to maintain a private cause of action

under the DTPA, is to ignore the well established presumption that every word in a statute has meaning. *Jessen Associates, Inc. v. Bullock,* 531 S.W.2d 593, 600 (Tex. 1975).

The 1979 DTPA contains a section entitled *Relief for Consumers.* This section specifically provides that a consumer may maintain a cause of action if aggrieved by deceptive practices. An aggrieved person must be a *consumer* and nowhere in the DTPA does the Legislature grant a remedy, by means of a private cause of action, for any *person.* The definition of a "person" specifically includes "associations" while the definition of a "consumer" omits the mention of such organizations. To speculate as to the Legislature's clear intention would be to substitute our judgment for the prerogative of the Legislature. *See Riverside National Bank,* 603 S.W.2d at 173. We choose not to do so. However, GECU ceased being an association when its members chose to incorporate under the Texas Credit Union Act.

In any event, we agree with GECU that it satisfied the definition of "corporation" as included in the then DTPA definition of "consumer." We hold that GECU is a corporation organized under a special law which provides methods for regulation and control of corporations organized thereunder.[3]

Accordingly, we reverse the judgment of the trial court and remand this cause for further consideration consistent with this opinion.

---

3. TEX.REV.CIV.STAT.ANN. art. 2461–1.01 et      seq. (Vernon 1986).