**CENTEX CORPORATION, Appellant,**

v.

**John DALTON, Appellee.**

No. 04–90–00241–CV.

Court of Appeals of Texas,
San Antonio.

May 22, 1991.

Jerry P. Jones, G. Luke Ashley, Michael R. Berry, Thompson & Knight, Dallas, for appellant.

Bernard Wm. Fischman, Tinsman & Houser, Inc., San Antonio, for appellee.

Before BUTTS, CARR and BISSETT, JJ.

## OPINION

BISSETT, Justice.[1]

This is an appeal by Centex Corporation ("Centex"), defendant in the trial court, from a summary judgment in favor of John Dalton ("Dalton"), plaintiff in the trial court, wherein Dalton was awarded $750,-000 as damages for breach of contract, plus prejudgment interest, costs, attorney's fees and post-judgment interest. We affirm.

Dalton filed suit against Centex on July 27, 1989, seeking to recover liquidated damages for alleged breach of contract. He later moved for summary judgment. Centex defended by filing a plea to the jurisdiction and a plea in abatement, both of which were overruled, and by asserting an affirmative defense that the contract sued upon was illegal and void. Centex also filed a response to Dalton's motion for summary judgment and further filed a cross-motion for summary judgment and declaratory judgment, which was denied.

The material facts are undisputed. The question presented is whether the trial court correctly applied the law to the undisputed facts. We answer that question in the affirmative.

The State of Texas was experiencing severely declining economic conditions during the latter part of 1988, and the Federal Home Loan Bank Board (hereafter either the "Bank Board" or "FHLBB" and the Federal Savings and Loan Insurance Corporation ("FSLIC"), as federal regulatory agencies, determined it was in the best interests of savings and loan borrowers, depositors, and other creditors to close, merge, liquidate or sell the insolvent insti-

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1988).

tutions under what came to be known as the "Southwest Plan." Federal legislation in 1989 abolished, among other things, the FHLBB and the FSLIC and created the Office of Thrift Supervision ("OTS"), and gave the director of OTS all powers that had been formerly vested in the abolished agencies.

Centex, acting by and through Mr. David Quinn ("Quinn"), its executive vice-president, and Dalton came in contact with each other in November of 1988, and entered into discussions concerning the acquisition of certain savings associations known as the "Seguin Group." Centex's attempted acquisition of the Seguin Group was unsuccessful. However, during the discussions relating to that attempted acquisition, Dalton attended a meeting in Washington, D.C., in late November, 1988, where he learned that four savings and loan associations in central Texas, known as the "Lamb Package," were available for purchase. Dalton communicated that information to Centex, and on December 23, 1988, Centex wrote a letter to Dalton, wherein it was stated:

In view of your experience in the savings and loan industry, including your operating experience, we will engage you as a consultant to work with us to consolidate and restructure the above-mentioned associations. Upon the condition that we acquire these associations on or before December 31, 1988, we will pay you at closing Three Hundred Thousand Dollars ($300,000) and thereafter pay to you One Hundred Fifty Thousand Dollars ($150,000) per year (payable 1/12 monthly) over a period of three (3) years, in exchange for which you will serve as a consultant to work with us to consolidate and restructure the associations. We have no obligation to close, and if we do not close, you will have no claim for any payment.

The offer made in the letter was accepted by Dalton on December 23, 1988. It will hereafter be referred to as the "contract."

Before the contract was signed, a meeting took place between Centex and the Bank Board, at which Centex advised representatives of the Board of Centex' intention to pay fees to Dalton upon completion of the acquisition of the Lamb Package. The Bank Board's representative told Centex that "such a payment would not be a concern to the FHLBB (Bank Board) as long as it was made by Centex" and not by the acquired associations or the new association which Centex would be required to form to succeed to the assets and deposit liabilities of the constituent entities in the Lamb Package. However, on December 28, 1988, the night prior to closing of Centex' acquisition of the Lamb Package, Quinn learned for the first time that the Bank Board probably would not permit payment of fees to Dalton. Centex, nevertheless, went through with the acquisition of the Lamb Package, forming a wholly owned subsidiary known as Texas Trust Savings Bank, FSB ("Texas Trust") as the actual acquiring entity. The acquisition of the Lamb Package was closed on December 29, 1988. The written approval of the acquisition of the savings and loan associations comprising the Lamb Package by the newly formed Texas Trust is evidenced by a resolution of the Bank Board, which contained the following prohibition:

No advisory fees, finders fees, investment banker's fees or other fees incurred in connection with the acquisition shall be paid directly or indirectly by the New Federal (Texas Trust).

A transcript of portions of the discussion of the Bank Board's Directors at the closed meeting of the Board on December 29, 1988, reveals that a "Mr. Brown" (whose identity is not otherwise given) stated with respect to the resolution which approved the acquisition:

It can be interpreted, I think, that [the Resolution] would cover the situation that the Dallas Bank has in fact discussed. However, if the Board would like more specificity on that particular provision to absolutely nail it down, if the Board would just simply authorize OGC [Office of General Counsel to OTS] to prepare a Minute Entry. And if the Board decides to approve the transaction, approve it subject to our preparing a Minute Entry, which would make abso-

lutely crystal clear that it does cover the situation that the Dallas Bank has discussed.

There is no evidence that the Bank Board took any action on the suggestion of Mr. Brown at the meeting on December 29, 1988; however, an amendatory resolution concerning the acquisition by Texas Trust was adopted by the Bank Board on January 31, 1989. It stated:

The Bank Board determined that the prohibition on advisory fees, finders fees, investment bankers fees or other fees imposed upon Texas Trust Savings Bank, a Federal Savings Bank, Llano, Texas ("Texas Trust"), should be extended to any affiliates and subsidiaries of Texas Trust.

Dalton performed all services required of him pursuant to the contract and stood ready, willing and able to perform any additional services which might be required of him thereunder. Centex has never made any request of Dalton that he perform any additional services and does not claim nonperformance as a defense to payment under the contract. Centex has not made any payment to Dalton under the contract. The undisputed evidence shows that the only reason why Centex did not pay Dalton in accordance with the provisions of the contract was the prohibition imposed by the Bank Board in the resolution adopted when the acquisition was approved on December 29, 1988, as amended by the "minutes entry" by the Bank Board on January 31, 1989.

■ Centex contends in its first point of error that the trial court erred in overruling its plea to the jurisdiction because Dalton's breach of contract claim involved a challenge to the ruling by the Federal Home Loan Bank Board, and exclusive jurisdiction for such challenge lies with the United States Court of Appeals. It argues that under the undisputed facts, the ruling by the Bank Board prohibited Centex from making any payment of fees under the contract, and that under these circumstances, Dalton was "an aggrieved party" whose exclusive remedy was provided by federal statute, 12 U.S.C. § 1730(k) (1983),

now codified by its successor statute 12 U.S.C.A. § 1467a(j) (Supp.1990), as follows:

Any party aggrieved by an order of the Director under this section may obtain a review of such order by filing in the court of appeals of the United States for the circuit in which the principal office of such party is located, or in the United States Court of Appeals for the District of Columbia Circuit, within 30 days after the date of service of such order, a written petition praying that the order of the Director be modified, terminated, or set aside.

Courts that have examined this statute have held that it provides the exclusive means of review of Bank Board actions. For example, see *Harr v. Prudential Federal Sav. & Loan Ass'n*, 557 F.2d 751 (10th Cir.1977), *cert. denied*, 434 U.S. 1033, 98 S.Ct. 766, 54 L.Ed.2d 780 (1978), and *North American Savings Ass'n v. Federal Home Loan Bank Board*, 755 F.2d 122 (8th Cir. 1985). The term "party aggrieved" as used in the statute includes persons with no opportunity to participate in the Bank Board's proceedings. *North American Savings*, 755 F.2d at 125.

Dalton carried his burden to prove each element supporting his cause of action with competent summary judgment evidence. That is, the contract was attached as an exhibit to his motion for summary judgment and by him sworn to be a true copy. It was attached as an exhibit to Quinn's affidavit in the response by Centex to Dalton's motion for summary judgment, and was sworn to by Quinn to be a true copy. Centex admitted Dalton's performance under the contract and its nonpayment. Dalton met all the essential elements of his prima facie case; consequently, the burden shifted to Centex to establish its affirmative defense by competent summary judgment evidence. *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936–37 (Tex.1972).

Centex relies primarily upon *Harr*, a case in which the plaintiffs were depositors in a federally chartered mutual savings association, and who filed suit against the association. They claimed that its plan to

convert from a mutual association to a stock association was unfair, that it violated the securities laws, and constituted a wrongful taking of their interest as depositors in the association.

██ The FHLBB in *Harr*, had approved the association's application for the conversion. The Tenth Circuit Court affirmed the trial court's dismissal of the plaintiffs' securities action, holding that the plaintiffs' cause of action, no matter how otherwise described, was in the first instance a challenge to the FHLBB's approval of the plan of conversion. The Court recognized that "[a]s the matter now stands, the approval of the [Bank] Board must somehow be first set aside before the plaintiffs can proceed as they here argue." 557 F.2d at 754. The Court concluded:

> The subject matter, the nature of plaintiffs' claim, and the arguments before this court demonstrate that the relief sought can only be afforded by a challenge to the Bank Board's action as the basic decision and authorization for the acts and consequences complained of. Anything else would be directed to derivative and secondary matters, and would, for all practical purposes, be a collateral attack on the decision. The statutory provisions are directed to this end and we hold that the remedy created is exclusive under these circumstances.

*Id.*

Centex argues that Dalton's claim is misdirected, constitutes a collateral attack on the decision of the Bank Board "to invalidate the letter agreement," and, therefore, the lower court did not have jurisdiction to decide the case. It further argues that "by statute," Dalton's exclusive remedy lay with the United States Courts of Appeals, and the trial court erred in overruling its plea to the jurisdiction. We do not agree. Dalton was not a depositor in Texas Trust or in any of the savings and loan associations in the Lamb Package. He did not have any interest in any of them or in Texas Trust. His suit on the contract was not an attack on the decision by the Bank Board. Dalton was not a party to the Resolution which approved the acquisition

by Texas Trust of the four savings and loan associations which comprised the Lamb Package. *Harr* is not in point.

██ The acquisition was completed on December 29, 1988, and on that date the only prohibition concerning fees incurred in connection with the acquisition was to the effect that none of the enumerated fees were to be paid directly or indirectly by "Texas Trust." It is undisputed that Texas Trust did not pay any fees to Dalton and the undisputed fact that only Centex had contracted to pay the fees in dispute is no evidence that Texas Trust indirectly contracted for such payment. Dalton, a complete stranger to the acquisition was not an "aggrieved party" and was not required to file a complaint concerning the payment of his fees by Centex with a United States Court of Appeals as a prerequisite to his filing suit in a state court for breach of contract. The record reveals that the obligation of Centex to pay Dalton the fees contracted for arose prior to the adoption by the Bank Board of the prohibition concerning fees and before the Resolution which permitted the acquisition was passed. The Resolution of December 29, 1988 has the effect of law. Laws of the United states are presumed to apply prospectively and not retrospectively. *See United States v. Security Industrial Bank,* 459 U.S. 70, 79, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982). A court should apply the law in effect at the time it renders its decision, unless legislative history or statutory direction is to the contrary, or a manifest injustice would result. *See Bradley v. School Board of the City of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). Here the contract between Centex and Dalton was made on December 23, 1988. The initial prohibition by the Bank was made on December 29, 1988, and amended on January 31, 1989. The trial court had jurisdiction of the lawsuit and did not err when it overruled Centex's plea to the jurisdiction.

Centex further contends in its second point of error that the trial court erred in granting summary judgment in favor of

Dalton because the contract in issue was illegal and void. We disagree.

Centex affirmatively pleaded illegality of the contract as a defense to Dalton's state law breach of contract claim. Further, Centex argued by cross motion for summary judgment that it was entitled to judgment in its favor because the Bank Board's ruling made the contract illegal and void; that the Bank Board was empowered by federal statute to invalidate the letter agreement by imposing conditions upon the acquisition; and that federal law also gave the FSLIC (and now, the OTS) the power and authority to enforce its ruling by initiating cease and desist proceedings for any actual or threatened violation of the conditions of the acquisition, which authority includes the power to require an insured institution to "rescind agreements or contracts." 12 U.S.C.A. § 1818(b)(6)(D) (1989). Centex concluded that under these statutes, the prohibitive condition has the force and effect of law, and any payment by Centex would necessarily violate the law.

Centex states in its brief:

[B]y circumstances that were completely beyond its control, Centex was prohibited by the Bank Board from performing under the letter agreement. That prohibition has the force and effect of law, and in order to avoid violating the law and subjecting itself to possible enforcement action, Centex complied with the condition, and did not make any payments to Dalton. Under these circumstances, the contract that Dalton seeks to enforce in this action is void.

■ Generally speaking, a contract to do a certain thing which cannot be performed without a violation of the law is void and unenforceable. *Lewis v. Davis*, 145 Tex. 468, 199 S.W.2d 146, 148–49 (1947). However, the rule against the enforcement of "illegal" contracts is subject to an exception where the illegality depends upon the existence of peculiar facts known to the party opposing enforcement and where the plaintiff had no intention of violating the law. *Graham v. Dean*, 144 Tex. 61, 188 S.W.2d 372, 373 (1945); *Oakes v. Guarantee Ins. Co.*, 573 S.W.2d 899, 902

(Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.). Even if the contract is "illegal" a recovery may still be had if the plaintiff requires no aid from the illegal transaction to establish his case. *Morrison v. City of Fort Worth*, 138 Tex. 10, 155 S.W.2d 908, 910 (1941); *Associated Milk Producers v. Nelson*, 624 S.W.2d 920, 924 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).

■ If a contract can be performed in a legal manner, and it might also be performed in another manner that renders it illegal, such options do not make the contract void. *Lewis v. Davis*, 199 S.W.2d at 149; *Mann v. Perry*, 486 S.W.2d 853, 858 (Tex.Civ.App.—Houston [14th Dist.] 1972, no writ); *Erminger v. Daniel*, 185 S.W.2d 148, 149 (Tex.Civ.App.—San Antonio 1945, writ ref'd w.o.m.).

This Court observed in the case of *Calvin V. Koltermann, Inc. v. Underream Piling Co.*, 563 S.W.2d 950, 957 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.):

Where the obligation to perform is absolute, impossibility of performance occurring after the contract was made is not an excuse for nonperformance if the impossibility might have reasonably been anticipated and guarded against in the contract. This is true even though an impossibility may subsequently have occurred by virtue of an act of God or some other circumstance over which the parties had no control. Impossibility of performance is also not an excuse if it is subsequently occasioned by the act or default of the promissor or by the acts of a third party.

■ In the case at bar, Dalton's contract is with Centex and not with Texas Trust or the acquired savings and loan associations themselves, and requires of him only that he work as a consultant to consolidate and restructure the acquired entities. The only prohibition relating to the payment of any fees was that the fees not be paid directly or indirectly by Texas Trust Savings. A payment by Centex would not violate the Resolution because it is not a direct payment by Texas Trust. Likewise, Centex's payment would not be indirect unless the

fees were paid by any of the acquired savings and loan associations or by Texas Trust, or if those entities were indemnified by Centex for such payment. There is no summary judgment evidence which suggests that any such entities paid Dalton his fees, or agreed to pay him therefor, or that Centex indemnified or agreed to indemnify any of them in the event that they, or either of them, paid or agreed to pay the fees in issue.

The Contract was signed after full negotiation between the parties with respect to the subject matter. By its own admission, Centex knew prior to signing the acquisition agreement with the Bank Board, that the Board was raising a question concerning payment of the contractual fees owed to Dalton. There is no summary judgment evidence that these concerns were ever communicated to Dalton. The evidence is uncontradicted that knowing of its contractual obligation to Dalton, Centex went forward with the acquisition agreement. It is conclusively established by the summary judgment evidence that Centex had two choices: it could close and become obligated to pay Dalton's fees; or it could refuse to close and not become obligated to pay the fees. It chose to close. Centex controlled, within its exclusive discretion, the source of payment of the contract fees, and had the power to choose a method of payment which did not violate the Resolution. By choosing to pay the fees itself, there was no violation of the Resolution which prohibited Texas Trust from directly, or indirectly, paying the fees. Moreover, Centex closed the acquisition with knowledge that the Bank Board might disapprove of the payment of fees to Dalton. The contract at issue was not illegal and void.

■ Next, Centex asserts in its third point of error that the trial court erred in overruling its plea in abatement because the "Office of Thrift Supervision (successor to the Federal Home Loan Bank Board)" was a necessary party to the action under TEX.R.CIV.P. 39 (Vernon 1979). Subsection (a) of the Rule provides:

A person who is subject to service of process shall be joined as a party to the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff.

In order to raise the issue, Centex filed a plea in abatement in the trial court, which was overruled. It claims that the OTS interest in this action is based on its position that the OTS has statutory authority to prohibit the payment of fees to Dalton. Therefore, joinder of OTS was required. Centex further argues that by failing to join the OTS and deciding the nature of its claimed interest in the subject matter of the suit, the trial court has now in fact created the very type of "inconsistent obligation" that is contemplated by Rule 39; that Centex is prohibited from performing under the terms of the letter agreement by the Bank Board's specific condition, and violation of that condition can expose Centex to enforcement action by the OTS; that a state court has now imposed an enforceable judgment against Centex indirect conflict with that condition; and that the trial court should have recognized that possible conflict, and should have required joinder of the OTS as a party to the case in order to protect Centex from the risk of inconsistent obligations by fully and completely determining and declaring the rights and liabilities of all interested parties.

Dalton does not challenge the Resolution or Amendatory Resolution. He does not seek a declaration that the Resolution and the Amendatory Resolution are unenforceable; he does not seek relief of any kind against OTS; and he does not claim that he is a person "aggrieved" by either the Reso-

lution and its prohibitions, or the Amendatory Resolution and its prohibition.

Presumably, Centex could have joined OTS as a third party defendant under TEX. R.CIV.P. 38(a) (Vernon Supp.1990). It did not do so. OTS filed a brief as *amicus curiae* in the trial court. Therefore, it was certainly aware of the pendency of this suit. If OTS claimed an interest in the subject matter it was not precluded from intervening in the suit under TEX.R.CIV.P. 60 (Vernon 1979). For whatever reason, OTS did not intervene, and there is no basis on which to assert that OTS claimed an interest in the subject matter of Dalton's contract with Centex.

TEX.R.CIV.P. 39(a) no longer speaks of "necessary" and "indispensable" parties and the Texas courts have begun to discard these terms. *Texas Oil & Gas Corp. v. Ostrom*, 638 S.W.2d 231, 233 (Tex.App.—Tyler 1982, writ ref'd n.r.e.). As presently enacted, that Rule deals not so much with whether the court has jurisdiction but whether the court ought to proceed with the parties before it. *Cooper v. Texas Gulf Indus., Inc.*, 513 S.W.2d 200, 204 (Tex.1974). Even prior to the present enactment of the Rule, the Texas courts were placing less emphasis on abstract classifications of rights and obligations, as against consideration of the particular consequences of proceeding with the suit in the absence of a party whose interest might be peripherally affected. *Petroleum Anchor Equip. Co. v. Tyra*, 406 S.W.2d 891, 893 (Tex.1966).

If OTS was a party whose presence was such that in its absence Centex is subjected to the risk of inconsistent obligations, Centex had the affirmative duty to join OTS. Having ignored that duty, it cannot now complain that Dalton should have undertaken that burden for it. Moreover, Centex waived any error by failing to seek joinder of OTS as a party. *Perkins v. Kemp*, 274 S.W.2d 892, 895 (Tex.Civ.App.—Eastland 1954, writ ref'd n.r.e.); *Jasper & E. Ry. Co. v. Peek*, 102 S.W. 776, 777 (Tex.Civ.App.1907, writ ref'd). *See also, Seaman v. Neel*, 480 S.W.2d 430, 438 (Tex. Civ.App.—Corpus Christi 1972, writ ref'd

n.r.e.). Having failed to join OTS as a third party defendant, Centex is not now in a position to complain of the judgment because OTS is not a party to this suit. The trial court properly overruled the plea in abatement.

Centex further contends in its fourth and final point of error that the trial court erred in granting Dalton liquidated damages in the sum of $750,000. We disagree.

The sole reason why Centex did not pay the fees in issue is the prohibition in the Resolution of the Bank Board, as dated December 29, 1988, as amended by the "Minute Entry" on January 31, 1989. As above noted, Centex argues that such prohibition makes payment illegal.

As reflected in the Order granting summary judgment, the trial court awarded Dalton the full amount of payments required for the life of the letter agreement. Centex argues that the ruling is erroneous in two respects. "First, Dalton has not demonstrated anticipatory breach of contract as required to entitle him to recover all remaining payments as liquidated damages. Second, even assuming that he has established anticipatory breach, he is only entitled to the present value of the remaining payments."

Anticipatory breach is a positive and unconditional refusal to perform the contract in the future. *Moore v. Jenkins*, 109 Tex. 461, 211 S.W. 975, 976 (1919); *Pollack v. Pollack*, 39 S.W.2d 853, 855 (Tex.Comm'n App.1931, holding approved); *Ennis Business Forms, Inc. v. Gehrig*, 534 S.W.2d 183, 189 (Tex.Civ.App.—Waco 1976, writ ref'd n.r.e.). In order to recover the amount to be paid out during the remaining life of the contract, Dalton had to establish that Centex's action in not paying the sums currently due constituted an anticipatory breach of the contract. He met that burden.

Dalton stated in his affidavit that was attached to his motion for summary judgment:

26. I performed all services required of me pursuant to the Contract and I have stood ready, willing and able to perform

any additional services which might be required of me pursuant thereto.

27. Centex has not made any request of me that I perform any additional services and Centex does not claim nonperformance as a defense to payment under the Contract.

28. The total amount which I am entitled to recover under the Contract is $750,000.00.

29. Of the total amount due me under the Contract, $300,000.00 was due on December 29, 1988.

30. Of the total amount due me under the Contract, monthly installments of $12,500.00 were due commencing January 29, 1989 and on the like day of each succeeding month until a total of 36 such monthly payments were made.

31. Defendant has not paid me any amounts due under the Contract.

Quinn stated in his affidavit which was attached to its response to Centex's response to Dalton's motion for summary judgment and its cross-motion for summary judgment:

12. Because Centex was prohibited by the Resolution from payment of the fees specified in the letter agreement with Mr. Dalton, no fees have been paid to Mr. Dalton.

Centex, in response to Dalton's Request for Admissions, admitted:

REQUEST NO. 28: Centex entered into the Contract on December 23, 1988 with the full intention of honoring its obligations under the Contract.

RESPONSE: Admitted.

\* \* \* \* \* \*

REQUEST NO. 30. Plaintiff performed all services required of him pursuant to the Contract and has stood ready, willing and able to perform any additional services which might be required of him pursuant thereto.

RESPONSE: Admitted.

REQUEST NO. 31. Centex has not made any request of Plaintiff that he perform any additional services and does not claim non-performance as a defense to payment under the Contract.

RESPONSE: Admitted, except that Plaintiff did not identify a thrift association which Centex could acquire and for which the FHLBB would permit it to make the payment to Plaintiff provided for under the Contract.

REQUEST NO. 32. The total amount which Plaintiff is entitled to recover under the Contract is $750,000.00.

RESPONSE: Centex admits that $750,-000.00 is the total amount called for under the Contract, but denies that Plaintiff is entitled to recover under the Contract because the FHLBB will not allow any payment provided for under the Contract to be made.

REQUEST NO. 33: Of the total amount due Plaintiff under the Contract, $300,-000.00 was due on December 29, 1988.

RESPONSE: Admitted.

REQUEST NO. 34: Of the total amount due Plaintiff under the Contract, monthly installments of $12,500.00 were due commencing January 29, 1989 and on the like day of each succeeding month until a total of 36 such monthly payments were made.

RESPONSE: Admitted.

REQUEST NO. 35: Defendant has not paid any amounts due under the Contract.

RESPONSE: Admitted.

The evidence in this case is uncontradicted that Centex made a positive and unconditional refusal to pay any fees to Dalton. Centex having admitted that Dalton performed all services required of him pursuant to the Contract, and that Dalton had been continuously ready, willing and able to perform any additional services, demonstrate conclusively Dalton's full performance of the Contract and Centex' breach thereof. Centex' breach was complete as of December 29, 1988. *Pollack v. Pollack,* 39 S.W.2d 853, 855 (Tex.Comm'n App.1931, holding approved), *on second motion for reh'g,* 46 S.W.2d 292, 293–94 (Tex.Comm'n App.1932); *Universal Life & Accident Ins. Co. v. Sanders,* 129 Tex. 344, 102 S.W.2d 405, 407 (Tex.Comm'n App.1937, opinion adopted).

Under the facts here presented, Dalton is entitled to the full payment of $750,000.00, and is not entitled to "only the present value of the future payments," as argued by Centex. In *Pollack*, 39 S.W.2d at 855, wherein Charles Pollack was plaintiff and Henry Pollack was defendant, it was held:

> [W]e hold that Henry, having not only failed and refused to meet the monthly payment due on the contract, but, on the other hand, having absolutely repudiated the obligation, all without just excuse, has breached the contract, and therefore Charles is entitled to maintain his action in damages at once for the entire breach, and is entitled in one suit to receive in damages the present value of all that he would have received if the contract had been performed, and he is not compelled to resort to repeated suits to recover the monthly payments.

Therefore, Dalton was not required to resort to repeated suits to recover the future monthly payments due under the Contract. *Universal Life & Accident Ins. Co. v. Sanders*, 102 S.W.2d at 406–07. Nor could the trial court award a judgment which required Centex to honor the contract by making the monthly payments. TEX.R. CIV.P. 301 (Vernon 1977); *Wileman v. Wade*, 665 S.W.2d 519, 520 (Tex.App.—Dallas 1983, no writ).

Even if a "present value" analysis were warranted or required by the case law, Centex did not offer any summary judgment evidence as to what would be the legally required rate or what might constitute a reasonable discount rate should such analysis be applicable. In the absence of summary judgment evidence establishing a discount rate, it is mathematically impossible to reduce the future stream of payments to a present value. Therefore, irrespective of any other considerations, there is no basis to reverse the judgment. Appellate review of a ruling granting a motion for judgment is made only on the record presented before the trial court at the time of the hearing and not on matters outside the record. *Government Employees Credit Union of San Antonio v. Fuji Photo Film U.S.A.*, 712 S.W.2d 208, 210 (Tex.App.—San Anto-

nio 1986, writ ref'd n.r.e.); *Richman Trusts v. Kutner*, 504 S.W.2d 539, 541 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.); *Dipp v. Rio Grande Produce, Inc.*, 330 S.W.2d 700, 702 (Tex.Civ.App.—El Paso 1959, writ ref'd n.r.e.). The trial court correctly awarded Dalton damages in the amount of $750,000.00.

The judgment of the trial court is affirmed.

## ON APPELLANT'S MOTION FOR REHEARING

Centex Corporation ("Centex") has filed a motion for rehearing. For the most part, it reurges and reargues the same points that it raised in its original appeal. However, it now contends for the first time that "since this case was submitted the OTS has taken action to make it clear that the government intends to prohibit Centex from paying the fees" pursuant to its contract with John Dalton. Centex, in support of its position, has attached to its motion, as an exhibit, a certified copy of a Resolution by the Office of Thrift Supervision, dated December 11, 1990, together with a copy of the Order to Cease and Desist, and a copy of the Stipulation and Consent to the issuance of the Order to Cease and Desist, signed by Billy C. Wood, Director of the Dallas Regional Office of the Office of Thrift Supervision, and Centex, acting by John G. Jones, its Vice President. The Order to Cease and Desist, hereafter the "Order," in pertinent part, reads:

## ORDER AND CEASE AND DESIST

WHEREAS, Centex Corporation, Dallas, Texas, a savings and loan holding company, through its directors, has executed a Stipulation and Consent to Issuance of Order to Cease and Desist, which is incorporated herein by reference ("Stipulation") and is accepted and approved by the Office of Thrift Supervision ("OTS"), acting through its Director for the Dallas Regional Office; and

WHEREAS, Centex Corporation, in the Stipulation, has consented and agreed to the issuance of this Order to

Cease and Desist ("Order") pursuant to Section 8(b) of the Federal Deposit Insurance Act ("FDIA"), as amended by the Financial Institutions Reform Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, 103 Stat. 183 ("FIRREA") (to be codified at 12 U.S.C. § 1818(b)).

NOW THEREFORE, IT IS ORDERED that Centex Corporation ("Centex") and its directors, officers, employees, agents, service corporations, and other persons acting on behalf of Centex Corporation shall not cause Centex Corporation, or Texas Trust Savings Bank, F.S.B., Llano, Texas, or any other of its affiliates, affiliated persons, subsidiaries, or service corporations ("Texas Trust"), to pay, directly or indirectly, any advisory fees, finders fees, investment bankers fees or other such fees incurred in connection with the approval of Centex Corporation's holding company application or with Texas Trust's acquisition of the four institutions comprising the "Lamb Package."

\* \* \* \* \* \*

The Office of Thrift Supervision
By: /s _____
　　　Billy C. Wood, Director
　　　Dallas Regional Office

The Resolution, in relevant part, provided:

WHEREAS, The Director Dallas Regional Office, OTS: (1) has reviewed a proposed Order to Cease and Desist against Centex Corporation, and (2) has determined that it is appropriate for the OTS to issue the order; and

NOW THEREFORE, IT IS RESOLVED that the Order and Stipulation are hereby approved and issued on behalf of the OTS, and the Director Dallas Regional Office is directed to execute said documents on behalf of the OTS and to serve them with this resolution on Centex Corporation, in accordance with the General Regulations of the OTS.

Dallas District
By: /s _____
　　　Billy C. Wood, Director
　　　Dallas Regional Office
　　　Office of Thrift Supervision

Centex consented to the issuance of the Order and waived "its right to a notice of charges and administrative hearing provided by Section 8(b) of the FDIA, as amended by FIRREA," and further waived "any right provided by Section 1818(b) of the FDIA, as amended by FIRREA ... or otherwise to challenge the validity of the Order."

The Order was promulgated and signed more than two years after judgment was rendered by the trial court and almost two months after the cause was submitted to this Court on October 25, 1990. Our opinion and judgment was delivered and rendered on March 20, 1991. The motion for rehearing was filed in this Court on April 4, 1991. The threshold question is whether the contents of the Order set out in the exhibit are properly before this Court for consideration.

■ All of the appellate courts when confronted with a situation comparable to the questions here presented, according to our research, have held that documents which were not part of the record in the trial court at the time judgment was rendered are not to be considered by the appellate court, absent unusual circumstances. *Chapman v. Mitsui Eng'g. & Shipbuilding, Co.*, 781 S.W.2d 312, 317–318 (Tex.App.—Houston [1st Dist.] 1989, writ denied); *First Bank of Deer Park v. Deer Park Indep. School Dist.*, 770 S.W.2d 849, 852 (Tex.App.—Texarkana 1989, writ denied); *Advertising Displays, Inc. v. Cote*, 732 S.W.2d 360, 363 (Tex.App.—Houston [14th Dist.] 1987, no writ); *Missouri–K. T.R. Co. v. Alvarez*, 670 S.W.2d 338, 353–354 (Tex.App.—Austin), *rev'd on other grounds*, 683 S.W.2d 375 (Tex.1984); *Tankard–Smith, Inc. General Contractors v. Thursby*, 663 S.W.2d 473, 476 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.); *Zodiac Corp. v. General Elec. Credit Corp.*, 566 S.W.2d 341, 347 (Tex.Civ.App.—Tyler 1978, no writ); *Whitmarsh v. Buckley*, 324 S.W.2d 298, 303 (Tex.Civ.App.—Houston 1959, no writ); *Freeman v. Anderson*, 119 S.W.2d 1081, 1083 (Tex.Civ. App.—Waco 1938, no writ). Neither the Resolution nor the Order was in existence

at the time judgment was rendered by the trial court or at the time this Court took the case under submission. Therefore, it was not, and could not be, part of the record upon which the trial court rendered judgment. Neither document relates in any way to our jurisdiction of the appeal. There is nothing in the motion for rehearing, in the Resolution or the Order, which shows any unusual circumstances which justify our considering the exhibit as part of the record in this case. As noted in our original opinion, this is an appeal from a summary judgment. We cannot consider the contents of the exhibits (the Resolution and Order) which were not before the trial court at the time when summary judgment was rendered.

 Centex intimates that this Court may take judicial notice of the Resolution and Order in question pursuant to TEX.R. CIV.EVID. 202. We do not agree. That Rule does not provide for judicial notice of federal resolutions or orders of boards, departments and commissions promulgated under federal statutes, but is limited to judicial notice of the "constitutions, public statutes, rules, regulations, ordinances, court decisions, and common law of every other state, territory, or jurisdiction of the United States." Moreover, while as a general rule, judicial notice may be taken of the *public* acts and orders of a federal governmental department, agency or commission, *private* orders may not be judicially noticed. *See* 35 TEX.JUR.3d *Evidence* § 56 (1984). Here, the Order was private, not public.

An appellate court, in reviewing the proceedings in the trial court, is limited to the record that is before it on appeal and may take judicial notice only of: 1) facts that could have been properly judicially noticed by the trial judge; 2) facts that are necessary to determine whether the appellate court has jurisdiction of the appeal; and 3) whether the appellant has taken the proper steps to have the record timely and properly filed. 1 R. RAY, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL § 185 (Texas Practice, 3d ed. 1980, Supp.1990). *See also A & M College*

*of Texas v. Guinn,* 280 S.W.2d 373, 377 (Tex.Civ.App.—Austin 1955, writ ref'd n.r. e.). In the instant case, the Resolution and Order could not have been judicially noticed by the trial court because neither was in existence at the time of trial or when judgment was rendered.

We are not authorized to take judicial notice of the Resolution and Order under the record in this case. The motion for rehearing is denied.