

## NUMBER 13-12-00685-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

LINUS F. DIAS,                                                    Appellant,

v.

RITIKA DIAS,                                                     Appellee.

### On appeal from the 28th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Chief Justice Valdez

Appellant Linus Dias appeals the trial court's order granting appellee Ritika Dias's bill of review and setting aside a previously entered divorce decree. By twelve issues, which we address as seven, Linus contends that (1) Ritika was not entitled to a bill of review because she failed to exercise due diligence in pursuing all legal remedies; (2) there was insufficient evidence to support the trial court's finding that Linus committed

extrinsic fraud; (3) Ritika failed to prove that she had a meritorious defense that she was denied from pursuing due to Linus's fraud; (4) the trial court erred by awarding attorney's fees for the bill of review because attorney's fees could only be recoverable as part of the division of the marital estate; (5) Ritika failed to prove that attorney's fees were reasonable and necessary; (6) Ritika was not entitled to fees for her expert witness as a matter of law because she did not establish the reliability of the expert testimony and because she did not prove that such fees were reasonable and necessary; and (7) the trial court should have awarded Linus attorney's fees after denying the bill of review. We affirm.

## I.  BACKGROUND

Linus obtained an agreed divorce from Ritika through a Final Divorce Decree entered by the trial court on November 20, 2009. On that date, Linus presented the agreed final divorce decree, which bore both signatures of both Linus and Ritika underneath the heading "Approved and Consented to as to Both Form and Substance." The trial court signed the decree. Ritika did not receive notice of the divorce proceedings because, on November 19, 2009, Linus had filed a waiver of service with Ritika's signature on it.

Ritika filed a Bill of Review with the trial court on November 8, 2010. A hearing on the bill of review was held on July 27, 2011. At the hearing, Ritika argued that the marital property was split inequitably by the divorce decree and that she was prevented from appearing or presenting evidence prior to the initial divorce because of Linus's fraud. She argued that she did not sign the final divorce decree or the waiver of service.

At the hearing on the bill of review, Ritika testified that she planned a trip to India from November 18, 2009 to February 2010 to attend her sister's wedding. She testified

2

that she received a fax of the unsigned signature page of the final divorce decree on November 17, 2009, one day before she was scheduled to leave for India. She explained that Linus had asked her brother to get her signature on the document, but that she did not sign it and did not take it seriously because "full documents were not served." The trial court signed the final divorce decree, which purported to be signed by Ritika, on November 20, 2009, two days after she left for India. Ritika testified that Linus emailed her a copy of the final divorce decree on November 30, but she did not see the email until December 30, forty days after the judgment was signed. She testified that she returned to America on January 27, 2010 because "she found out about the divorce which had been finalized without [her] knowledge."

At the bill of review hearing, four documents were admitted into evidence that were purportedly signed by Ritika and notarized by an employee of Bank of America, Amelia S. Yard, on December 26, 2008: (1) a privacy act document, (2) an affidavit of identity, (3) a release of records, and (4) the waiver of service at issue in this case. The final divorce decree was not notarized. The first three documents related to Ritika's immigration status. The waiver of service indicated that she had received a copy of the original petition for divorce and stated, "I enter my appearance in this case for all purposes . . . . I agree that this case may be taken up and considered by the Court without further notice to me." Ritika testified that she appeared before a notary at Bank of America on that date and does not dispute that she signed immigration documents; but she testified that she did not sign the waiver of service. She stated that she appeared at Bank of America only to sign immigration documents and would not have signed any document relating to a divorce. Ritika explained that the first time she learned of the waiver of

3

service was when the attorney she consulted after she received notice of the divorce decree informed her that a waiver of service had been filed.

Yard testified by deposition that it was her signature on the notary stamps on the documents purportedly signed by Ritika on December 26, 2008 and that she could identify that she had hand-written Ritika's social security and driver's license numbers and the date. Yard testified that she did not remember the events in question. She further testified that both she and Bank of America were required to keep notary records; however, the notary books for that day had either been lost or destroyed.

Ritika elicited testimony from Linda James, an expert in handwriting analysis. Linus's attorney objected to the handwriting expert's qualifications, and the trial court overruled the objections. Ritika also admitted into evidence a report of the handwriting analysis completed by James. In the report, James concluded that

> the Ritika Dias signature on the Final Decree of Divorce, dated November 20, 2009 is a replica signature of the Ritika Dias signature on the Waver [sic] of Service, notarized December 26, 2008 . . . . [I]t is my professional opinion that there is overwhelming evidence to support the conclusion that signatures Ritika Dias on the Waver [sic] of Service, notarized December 26, 2008, and Final Decree of Divorce, dated November 20, 2009 are non-genuine.

At the hearing, James testified that Ritika's signature on the divorce decree was a replica of the signature on the waiver of service. She stated, "It is my professional opinion that the final decree of divorce is a non-genuine signature." On cross-examination, James testified that the signature on the waiver of service was a "genuine signature." She explained that at the time she completed the report, she was examining a copy of the waiver of service, not the original.

4

Linus testified at the hearing on the bill of review that he was present at Bank of America on December 26, 2008 and witnessed Ritika sign immigration documents and the waiver of service. Linus testified that on that date, Ritika also signed the final divorce decree, but that the decree was not notarized. Linus explained that his lawyer drafted the decree and he presented it to Ritika for her review. Linus stated that he gave the waiver of service to his lawyer as soon as it was signed in December of 2008, but that his lawyer did not file the waiver of service with the trial court until almost a year later because he had to wait for Ritika's green card to be processed before he could proceed with the divorce. Linus testified that he did not appear before the trial court to provide any evidence or testimony, but that the agreed divorce was entered by submission. Linus testified that he faxed a copy of the signature page of the divorce decree to Ritika's brother after the trial court judge signed the decree.

On August 30, 2011, the trial court granted the bill of review, vacated the original divorce decree, and ordered Linus to pay Ritika $24,000 in attorney's and expert fees. It entered findings of fact concluding, *inter alia*, the following: (1) both the signature on the waiver of service and final divorce decree were "non-genuine" and neither document was signed by Ritika; (2) Ritika "was not served with citation in the divorce action as required by law, and was not given proper notice of the divorce suit"; (3) "[Ritika] had no actual knowledge of the suit for divorce filed by [Linus] until well after the expiration of thirty (30) days after the judgment was rendered"; (4) "[Ritika] was prevented from asserting her meritorious defense as a direct impact of the fraudulent and wrongful acts of [Linus]"; (5) "[Ritika's] failure to assert any defense was due to no negligence or fault of [Ritika], but was directly due to the fraudulent and wrongful acts of [Linus]"; (6) "[Ritika] agreed to pay

her attorneys the reasonable fee of $250.00 per hour in the prosecution of her claims";

(7) "Prior to the original Bill of Review trial, [Ritika] had incurred $24,000.00 in attorney's fees for prosecution of her claims. Such fees are reasonable, necessary, and customary for a case involving claims and defenses such as those presented in this case."

A second divorce proceeding was held on September 21, 2012. After evidence was presented and testimony was heard from both parties, the trial court entered a final decree on October 2, 2012, in which the property was split the same way as it had been in the first decree, except that Linus was awarded a different car because he no longer owned the car awarded to him in the first decree. The divorce decree indicated that each party would be responsible for its own costs and attorney's fees "incurred as a result of legal representation in this case." This appeal from the order granting the bill of review followed.

## II.    STANDARD OF REVIEW AND APPLICABLE LAW

We review the granting or denial of a bill of review under an abuse of discretion standard.[1] *Temple v. Archambo*, 161 S.W.3d 217, 224 (Tex. App.—Corpus Christi 2005,

---

[1] A bill of review that sets aside a prior judgment, but does not dispose of all issues of the underlying case on the merits, is generally interlocutory in nature and is not a final judgment appealable to the court of appeals. *Tesoro Petroleum v. Smith*, 796 S.W.2d 705, 705 (Tex. 1990). In this case, the trial court assigned cause number 2010 FAM05586-A to the bill of review and cause number 08-6228-A to the underlying divorce case. Linus's appellate brief only challenges the ruling on the bill of review and trial court cause number 2010 FAM05586-A. Regardless, we find that the judgment on the bill of review is a final appealable order because a final decree has been entered in the underlying divorce case, and therefore the trial court has disposed of all issues. We therefore have jurisdiction over this appeal.

Additionally, the appellate record includes the final divorce decree from the underlying divorce proceedings, signed October 2, 2012. We therefore take judicial notice of the final divorce decree in trial court cause number 08-6228-A. *See Centex Corp. v. Dalton,* 810 S.W.2d 812, 824 (Tex. App.—San Antonio 1991), *rev'd on other grounds*, 840 S.W.2d 952 (Tex. 1992).

6

no pet.). When the issue on appeal concerns a question of law, the appellate court reviews the trial court's decision de novo. *Id.*

A bill of review is an independent action to set aside a judgment that is no longer appealable or subject to challenge by a motion for new trial. *Wembley Inv. Co. v. Herrera*, 11 S.W.3d 924, 927 (Tex.1999). A bill of review allows trial courts to rectify their own errors, eliminating the need for lengthy appellate review. *Gold v. Gold*, 145 S.W.3d 212, 214 (Tex. 2004). The Texas Supreme Court has recognized three prerequisites for such bills: (1) a meritorious defense; (2) that was made due to fraud, accident, or wrongful act by an opponent or official mistake by a clerk; and (3) unmixed with any fault or negligence of the party filing the bill. *Wembley*, 11 S.W.3d at 927. However, under Texas law,

> bill of review plaintiffs claiming non-service . . . are relieved of two elements ordinarily required to be proved in a bill of review proceeding. First, if a plaintiff was not served, constitutional due process relieves the plaintiff from the need to show a meritorious defense. Second, the plaintiff is relieved from showing that fraud, accident, wrongful act or official mistake prevented the plaintiff from presenting such a defense.

*Caldwell v. Barnes*, 154 S.W.3d 93, 96−97 (Tex. 2004) (citations omitted); *see Peralta v. Heights Med. Ctr., Inc.,* 485 U.S. 80, 86–87 (1988) (holding that the meritorious defense requirement in a bill of review proceeding violates due process where the bill of review plaintiff has no notice of the proceeding in which the default judgment was rendered).

A bill of review petitioner must ordinarily have exercised due diligence in the pursuit of all adequate legal remedies against the challenged judgment. *Wembley*, 11 S.W.3d at 927. "If [adequate] legal remedies were available but ignored, relief by equitable bill of review is unavailable." *Id.* "However, a party is not 'ignoring' its remedies when it chooses one appellate avenue rather than another." *Gold*, 145 S.W.3d at 214. "Adequate legal remedies" only consist of motions that could have been filed in the trial court's first

7

proceeding and does not include a restricted appeal. *Id.* Moreover, failure to pursue adequate legal remedies only precludes a bill of review if such failure constituted fault or negligence on the part of the bill of review petitioner. *Id.*

### III.    DUE DILIGENCE IN PURSUING A LEGAL REMEDY

By his first issue, Linus argues that Ritika was not entitled to a bill of review because she failed to exercise due diligence in pursuing either a motion for new trial or a direct appeal after she received notice of the original divorce decree. We disagree.

Generally, a trial court's plenary power expires thirty days after it signs a judgment. TEX. R. CIV. P. 329(d). This allows parties thirty days to file a notice of appeal, motion for new trial, or any other post-judgment motions. *Id.* R. 306a(1). However, under Texas Rules of Civil Procedure 306a(4) and (5), if a party first receives notice or actual knowledge of a final judgment between twenty-one and ninety days after it was signed, that party may file a sworn motion and affidavit to extend time to file post-judgment motions, which, if granted, extends the trial court's plenary power to thirty days after notice of the judgment was received or after the party acquired actual knowledge of the judgment. *Id.* R. 306a(4), (5).

In the present case, the evidence in the record indicates that forty days after the judgment had been signed, while she was in India, Ritika first saw an email informing her that a divorce decree had been entered by the trial court. Both parties agree that, at that point, she first obtained actual knowledge of the divorce decree, which would have entitled her to file a motion to extend her deadlines for filing post-judgment motions. *See* id. R. 306a(4). Linus argues that Ritika's failure to extend post-judgment filing deadlines and, if granted, file a motion for new trial and notice of appeal constituted a failure to

8

exercise due diligence. However, Linus directs us to no case law, and we find none, indicating that in order to exercise due diligence in pursuing all available legal remedies, a party must attempt to extend its filing deadlines after receiving late notice of judgment. Moreover, the extension of filing deadlines is not automatic; instead, the trial court must grant a sworn motion filed by the aggrieved party. *See id.*; *Mem'l Hosp. v. Gillis,* 741 S.W.2d 364, 365 (Tex. 1987). We find that Ritika's failure to file a motion to extend post-judgment filing deadlines did not amount to negligence or indicate that she was at fault for not seeking a post-judgment remedy in the trial court. *See Gold*, 145 S.W.3d at 214.

Alternatively, Linus argues that Ritika failed to exercise due diligence because she did not file an extension of time to file a notice of appeal with this Court, which could have allowed her to file a late notice of appeal if she could demonstrate good cause. TEX. R. APP. P. 10.5(b). Initially, we note that this procedure would only allow Ritika the opportunity to pursue a direct appeal, not a motion for new trial. Appellate court review is limited to the scope of the trial court record. Ritika's argument in the bill of review was based on extrinsic fraud and failure to receive notice of the trial, which required her to provide evidence outside of the record; therefore, a direct appeal would not have allowed her an opportunity to present her argument that the original divorce decree was erroneous. Regardless, as with a motion to extend post-judgment filing deadlines in the trial court, no case law indicates that a failure to file a motion to extend time to file a notice of appeal constitutes negligence precluding a bill of review. Accordingly, we hold that Ritika's failure to file a motion for extension of time to file a notice of appeal did not preclude her from filing a bill of review. *See Gold*, 145 S.W.3d at 214

We overrule Linus's first issue.

9

## IV.    EVIDENCE OF FRAUD

The trial court determined in its findings of fact that Ritika's signatures on both the waiver of service and the final decree of divorce were non-genuine and were obtained by Linus's fraudulent and wrongful actions.  Linus argues that the trial court erred by granting the bill of review on this basis because there was no evidence that the signature on the waiver of service was not genuine and because the trial court's finding that the signature on the divorce decree was fraudulently obtained did not amount to extrinsic fraud.  In contrast, we find that the trial court did not abuse its discretion by granting the bill of review based on its finding that the signature on waiver of service was not genuine, that the signature on the divorce decree was fraudulent, or both.

### A.  Waiver of Service

As an initial matter, because the trial court's ruling was based on a finding that Ritika did not sign a waiver of service and therefore improperly did not receive notice of the divorce proceedings, she was relieved of the requirement to prove that her failure to present a defense was the result of fraud.  *See Caldwell,* 154 S.W.3d at 96−97.  However, to be entitled to a bill of review, Ritika was still required to show that she failed to receive notice of the judgment through no fault of her own.  *See Wembley*, 11 S.W.3d at 927.  Therefore, whether the trial court's finding regarding the signature on the waiver of service entitles Ritika to a bill of review turns solely on whether the trial court abused its discretion by finding that the signature on the waiver of service was non-genuine.  *See id.*  In reviewing this finding, we must be mindful that the trial court is the fact-finder at a hearing on a bill of review and has the duty of ascertaining the true facts, and it is within the court's province to judge the credibility of the witnesses and to determine the weight to be given

10

their testimony. *Royal Zenith Corp. v. Martinez,* 695 S.W.2d 327, 330 (Tex. App.—Waco 1985, no writ). A trial court does not abuse its discretion when it makes its decision on conflicting evidence and some evidence supports its judgment. *Unifund CCR Partners v. Villa,* 299 S.W.3d 92, 97 (Tex. 2009); *Garcia–Udall v. Udall,* 141 S.W.3d 323, 333 (Tex. App.—Dallas 2004, no pet.).

At the bill of review hearing, the trial court considered the following evidence: (1) Ritika testified that she did not sign the divorce decree or the waiver of service and that she did not know that a waiver of service had been filed until after the divorce decree was entered by the trial court; (2) Linda James, Ritika's handwriting expert, completed a handwriting analysis and testified that the signature on the final divorce decree was a replica of the signature on the waiver of service; (3) James testified that although she originally determined in her report that Ritika's signature on a copy of the waiver of service was non-genuine, after reviewing the original waiver of service, she believed the signature was genuine; (4) the Bank of America employee who notarized the signature stated that after reviewing the document, she concluded that she did notarize the waiver of service but that she did not remember the specific events in question and could not conclude whether or not Ritika's signature was genuine; (5) the notary testified that it was the bank's policy to retain the notary logbooks but the logbook of the date in question was either lost or destroyed; and (6) Linus testified that he was present at Bank of America and witnessed Ritika sign the waiver of service.

In its findings of fact, the trial court determined that Ritika's signature on the waiver of service was "non-genuine." Linus argues that this finding was erroneous because the only "credible evidence showed that the signature on the waiver of service was not

fraudulent." However, we hold that the trial court was entitled to determine that Ritika's signature on the waiver of service was non-genuine from Ritika's testimony that she did not sign the waiver and the fact that a fraudulent divorce decree had been filed with the trial court. The trial court was entitled to disbelieve Linus's testimony to the contrary and the expert's testimony that the signature on the waiver was genuine, which contradicted her previous report. *See Villa,* 299 S.W.3d at 97. Moreover, the notary's explanation that she did not remember Ritika signing the documents on the date in question and that the notary logbooks should have been retained but were lost or destroyed supports an implied finding that the notarized signature did not discredit Ritika's testimony. *See id.* Accordingly, we conclude that the trial court did not abuse its discretion by finding that Ritika did not sign the waiver of service and therefore, through no fault of her own, failed to receive notice of the divorce proceedings.

## B. Signature on the Divorce Decree

Moreover, the trial court's finding that the signature on the final divorce decree itself was procured by fraud and prevented the divorce from being fully litigated was sufficient to support the trial court's granting of the bill of review on the basis of extrinsic fraud. Notably, on appeal, Linus does not challenge the trial court's finding that the signature was not authentic but only argues that such a finding does not amount to extrinsic fraud.

Only extrinsic fraud will support the fraud element required for a bill of review to be successful. *See Tice v. City of Pasadena*, 767 S.W.2d 700, 702 (Tex. 1989). Extrinsic fraud denies a party the opportunity to fully litigate at trial all the rights or defenses that could have been asserted. *Browning v. Prostok,* 165 S.W.3d 336, 347 (Tex. 2005); *King*

12

*Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 752 (Tex. 2003); *Montgomery v. Kennedy*, 669 S.W.2d 309, 313 (Tex. 1984) ("Extrinsic fraud is conduct that prevents a real trial upon the issues involved."). It has been defined as "'some deception practiced by [an opposing party], collateral to the issues in the case, which prevent[ed] the petitioner from fully presenting' claims or defenses in the underlying action." *King Ranch*, 118 S.W.3d at 753 (quoting *Bakali v. Bakali*, 830 S.W.2d 251, 255 (Tex. App.—Dallas 1992, no writ)). Extrinsic fraud is "wrongful conduct practiced outside of the adversary trial—such as keeping a party away from court, making false promises of compromise, denying a party knowledge of the suit—that affects the manner in which the judgment is procured." *In re Office of Attorney Gen. of Texas,* 193 S.W.3d 690, 692 (Tex. App.—Beaumont 2006, no pet.) (orig. proceeding). "[Extrinsic] fraud must be collateral to the matter tried and not something which was actually or potentially in issue." *Browning*, 165 S.W.3d at 347; *accord Montgomery*, 669 S.W.2d at 312. Courts conclude that fraud is extrinsic in those rare instances when "fraud distorts the judicial process to such an extent that confidence in the ability to discover the fraudulent conduct through the regular adversarial process is undermined, and the need to correct such a distortion outweighs the need for finality of judgment." *PNS Stores, Inc. v. Rivera,* 379 S.W.3d 267, 275 (Tex. 2012).

In contrast, intrinsic fraud, which will not support a bill of review, "relates to the merits of the issues which were presented and presumably were or should have been settled in the former action." *Tice*, 767 S.W.2d at 702. Intrinsic fraud "is inherent in the matter considered and determined in the trial where the fraudulent acts pertain to an issue involved in the original action, or where the acts constituting the fraud were, or could have been litigated therein." *Montgomery*, 669 S.W.2d at 313.

Here, the trial court granted an agreed divorce, which could only have been granted with Ritika's signature on the decree or by her consent. *Sohocki v. Sohocki,* 897 S.W.2d 422, 424 (Tex. App.—Corpus Christi 1995, no writ) (explaining that a trial court can only grant an agreed divorce with the valid consent of both parties at the time the divorce is entered). The trial court could not have entered an agreed divorce decree without the allegedly fraudulent signature or Ritika's appearance in court. *See Sohocki*, 897 S.W.2d at 424. Even if the only credible evidence established that Ritika signed a waiver of service, that waiver did not permit the trial court to enter an agreed divorce decree absent her consent. *See. id.* In other words, Ritika's signature on the waiver, assuming it was genuine, waived her right to be present at the divorce proceedings and to challenge the evidence, but did not serve as consent to a divorce. This is not the case of perjured testimony or a fraudulent instrument, which is considered intrinsic fraud and does not support a bill of review. *See Tice*, 767 S.W.2d at 702 (reasoning that perjured testimony or fraudulent instruments are intrinsic fraud which should be guarded against in the underlying proceeding). Instead, Ritika's signature on the divorce decree operated as Ritika's consent to the divorce, which allowed the court to proceed with the divorce without "a real trial upon the issues involved." *See Montgomery*, 669 S.W.2d at 313. The fraudulent signature deprived Ritika of any opportunity to consent to the agreed divorce, and therefore, denied her the "opportunity to fully litigate at trial all the rights or defenses that could have been asserted." *King Ranch*, 118 S.W.3d at 753. Moreover, it amounted to false conduct in procuring Ritika's consent that prevented the trial court from fully litigating the proceedings. *See In re Office of Attorney Gen. of Texas*, 193 S.W.3d at 692.

14

The trial court therefore could have granted the bill of review on the sole basis of its finding that the signature on the divorce decree was the product of extrinsic fraud.

We overrule Linus's second issue.

## V.    MERITORIOUS DEFENSE

Linus contends that Ritika failed to prove that she had a meritorious defense that she was denied from pursuing due to Linus's fraud.  *See Wembley Inv. Co.*, 11 S.W.3d at 927.  However, we have determined that the trial court did not abuse its discretion by granting the bill of review on the basis that the signature on the waiver of service was not genuine and that Ritika did not receive notice of the divorce proceedings.  Accordingly, because the trial court did not err in finding that Ritika was not properly served, she was relieved from the requirement of proving that she had a meritorious defense.  *See Caldwell*, 154 S.W.3d at 96–97.

Moreover, even if the trial court's conclusion was based solely on its finding that the divorce decree was fraudulently signed, we find that Ritika's evidence showing that she did not sign the divorce decree in itself amounts to a meritorious defense because the consent of the parties was the basis for the agreed divorce and the agreed divorce could not have been granted without the fraudulently obtained signature.  *See Sohocki*, 897 S.W.2d at 424.

We overrule Linus's third issue.

## VI.    AVAILABILITY OF ATTORNEY'S FEES

By his next issue, Linus argues that the trial court erred because attorney's fees were not available to Ritika for the bill of review.  A successful party in a bill of review is entitled to recover attorney's fees if attorney's fees are authorized in the prosecution or

defense of the underlying case. *Meece v. Moerbe,* 631 S.W.2d 729, 730 (Tex. 1982). More specifically, attorney's fees are available if they would have been available in an appeal of the underlying case. *State ex rel. Mattox v. Buentello,* 800 S.W.2d 320, 327 (Tex. App.—Corpus Christi 1990, no writ). We will not overturn an award of attorney's fees absent a clear abuse of discretion. *Grynberg v. M-I L.L.C.,* 398 S.W.3d 864, 880 (Tex. App.—Corpus Christi 2012, pet. denied).

At the time this suit was filed, there was no statute specifically authorizing an award of attorney's fees in a divorce proceeding; however, the trial court, within its sound discretion, was authorized to award attorney's fees as part of the just and right division of the marital estate.[2] *Mandell v. Mandell,* 310 S.W.3d 531, 541 (Tex. App.—Fort Worth 2010, pet. denied); *Hopkins v. Hopkins*, 540 S.W.2d 783, 788 (Tex. Civ. App.—Corpus Christi 1976, no writ). Moreover, trial courts also have the discretion to award reasonable attorney's fees for the appeal of divorce actions. *Dickson v. McWilliams,* 543 S.W.2d 868, 870 (Tex. App.—Houston [1st Dist.] 1976, no writ). Texas courts have reasoned that attorney's fees are recoverable for a party that successfully defends against a bill of review in a divorce proceeding because they would have been available in an appeal of the underlying divorce decree. *See Bakali*, 830 S.W.2d at 257 ("Because husband could have recovered attorney's fees if wife had appealed the divorce decree, the trial court did not err in awarding attorney's fees in this bill of review proceeding.")

---

[2] The current family code provides that a trial court may award reasonable attorney's fees and expenses in a suit for dissolution of marriage. *See* TEX. FAM. CODE ANN. § 6.708(c) (West, Westlaw through 2013 3d C.S.). This provision was added in 2013 and was not applicable at the time this petition for divorce was filed.

16

Linus contends that the trial court erred because attorney's fees for a divorce were only available as part of the division of the marital estate and, in this case, the property was not actually divided by the trial court's ruling on the bill of review. *See Mandell*, 310 S.W.3d at 541. He argues that attorney's fees for the bill of review could only have been awarded after the new divorce decree was entered and the marital estate was finally divided. Linus therefore essentially complains of the timing of the award of attorney's fees, arguing that, even though in this case a divorce decree was eventually entered, Ritika could not recover attorney's fees in the order granting the bill of review because after it was entered, the marital property had not yet been divided. We disagree.

Linus relies on our holding in *State ex rel. Mattox v. Buentello* in which we determined that the prevailing party in a bill of review vacating a divorce decree could not recover attorney's fees. *See* 800 S.W.2d at 328. However, in *Buentello*, we clearly reasoned that attorney's fees are available to the prevailing party in a bill of review if they are authorized in the underlying suit. *Id.* In *Buentello*, we explained that under Texas law, "[a]ttorney's fees are available to the defendant in an unsuccessful bill of review proceeding when attorney's fees would be available 'on appeal,' pursuant to the default judgment in the underlying cause of action." *Id.* at 327. Recognizing that the circumstances are different when a bill of review is successful, we explained that, "When the movant on a bill of review prevails, the judgment previously entered is set aside, and a new judgment, based on the evidence heard on the bill of review, must be entered." *Id.* Therefore, we concluded that when a party prevails in a bill of review, "*[i]t follows that attorney's fees would be available to the successful party if there was a legal basis for awarding them pursuant to the underlying cause of action.*" *Id.* (emphasis added).

17

Ultimately, in *Buentello*, we determined that attorney's fees were not available for the bill of review because the entire basis for the trial court's granting of the bill of review was that there was no marital relationship. *Id.* at 328. Therefore, there could be no divorce in the underlying proceeding, and the trial court would not have been authorized to award attorney's fees. *Id.*

Citing *Buentello*, Linus contends that, "a prevailing party in a Bill of Review cannot recover attorney's fees because the result is the underlying judgment being set aside and the parties being placed at the status quo prior to entry of the underlying judgment." However, Linus misconstrues our reasoning in *Buentello*.

While, in *Buentello*, we contemplated a situation where a new judgment is entered based on evidence from the bill of review, we specifically reasoned that, in setting aside the previous judgment, the trial court may use its discretion to award reasonable attorney's fees if there was a legal basis for doing so pursuant to the underlying cause of action. *Id.* at 327. We did not hold that attorney's fees can only be awarded for the bill of review if they are made available by the new judgment; instead, attorney's fees are available for the prevailing party's pursuit of the bill of review as they could have been available, at the trial court's discretion, for the party's involvement in the original divorce decree or for an appeal from the original divorce decree. In other words, in *Buentello*, we explicitly determined that attorney's fees were not available because there could be no divorce in the underlying proceeding, not because after the bill of review was granted, there was no divorce. *Id.* at 328.

Here, the trial court could have, and eventually did, divide the marital estate in the underlying proceeding. The trial court had discretion to award attorney's fees for the work

18

performed in preparing for the bill of review hearing because it was authorized to do so for the work performed in preparation for the underlying case or for an appeal of the underlying case.[3] Unlike *Buentello*, there was no legal finding precluding either the original divorce decree or an award of attorney's fees pursuant to the decree, and the trial court eventually entered a divorce decree in a subsequent proceeding. *See id.*

In sum, we find no requirement that the marital estate actually be divided at the bill of review hearing in order for the trial court to award attorney's fees for a successful bill of review setting aside a divorce decree. Instead, attorney's fees are available to the successful party following a bill of review if there was a legal basis for awarding them in the underlying cause of action. *Id.* at 327. The trial court had discretion to award attorney's fees in the underlying divorce action.[4] Accordingly, the trial court did not abuse its discretion by awarding attorney's fees to Ritika in its order granting the bill of review.

---

[3] Notably, a trial court awards attorney's fees in a divorce case pursuant to its equitable power in dividing the marital estate, and the party receiving attorney's fees does not need to prevail in the underlying proceedings. *See Mandell v. Mandell,* 310 S.W.3d 531, 541 (Tex. App.—Fort Worth 2010, pet. denied). Here, the trial court, in consideration of the bill of review, did not need to find that Ritika could have made any meritorious argument entitling her to attorney's fees. Instead, it was equitable for the trial court to award attorney's fees to Ritika for the bill of review, before entering a new judgment dividing the marital estate, in order to return her to the status she would have held had the first judgment not been entered. This award was therefore not contingent on any finding that was made in the previous decree or that needed to be made in the subsequent decree.

[4] In his reply brief on appeal, Linus also argues that attorney's fees were not available for Ritika because she was not represented by counsel in the original or subsequent divorce proceedings and because attorney's fees were not awarded in the underlying proceedings. However, as explained in the body of this opinion, attorney's fees for a bill of review are available for the work performed in preparation for the bill of review as they would have been available in preparation for the case in the underlying proceedings. *State ex rel. Mattox v. Buentello,* 800 S.W.2d 320, 327 (Tex. App.—Corpus Christi 1990, no writ). Accordingly, the trial court properly awarded Ritika attorney's fees for the representation she received for the bill of review proceedings.

We note that, in the second divorce decree, which was listed as a separate trial court cause number from the bill of review, the trial court explicitly ordered that each party be responsible for its own attorney's fees "incurred as a result of legal representation in this case." The decree made no mention of the bill of review or attorney's fees for the bill of review. As noted above, the attorney's fees for the bill of review were awarded for the representation provided to Ritika for the bill of review because there was a legal basis for awarding them as part of the divorce decree. *See id.* Therefore, the trial court's order regarding attorney's fees for the underlying proceedings does not negate the award of attorney's for the bill of review. Notably,

We overrule Linus's fourth issue.

## VII.  EXPERT WITNESS FEES AND CALCULATION OF ATTORNEY'S FEES

Linus argues that the trial court erred by granting Ritika $24,000 in attorney's fees because Ritika failed to prove that the attorney's fees were reasonable and necessary and because Ritika was not entitled to recover expert fees.  However, Linus failed to make these arguments to the trial court during the hearing or in his motion for new trial.

At the bill of review hearing, Ritika's attorney requested to offer testimony in narrative form to prove up her attorney's fees.  Ritika's attorney testified that she had accrued $24,000 in attorney's fees, charging $250 per hour for her time and $90 per hour for her paralegal's time.  She stated that she had expended ninety-seven hours on the case, explained the type of legal work she performed, and testified that she believed the fees were reasonable and necessary.  She further testified that $5,500 of the $24,000 was paid to James, Ritika's expert witness.  Linus's attorney was then afforded the opportunity to cross-examine Ritika's attorney.  Linus's attorney asked Ritika's attorney to restate her total bill.  Linus's attorney then stated, "And that is including the expert fees.  Okay.  I have no questions."  Because Linus did not object to Ritika's method for calculating attorney's fees, the issue is not preserved for our review.  *See* TEX. R. APP. P. 33.1; *see also Circle Ridge Prod.*, *Inc. v. Kittrell Family Minerals, LLC*, No. 06-13-00009-CV, 2013 WL 3781367, at *7 (Tex. App.—Texarkana July 17, 2013, pet. denied) (finding that appellant waived its argument that appellee needed to provide documentary proof of attorney's fees by failing to make the argument at trial);  *Tex. Dept. of Criminal Justice v.*

the same trial court judge signed both the order granting the bill of review and the final divorce decree.  Had the judge intended to negate the original award of attorney's fees, she likely would have done so explicitly in the order.

20

*King,* No. 10-01-058-CV, 2003 WL 22937252, at *5 (Tex. App.—Waco Dec. 10, 2003, pet. denied) (mem. op.) (finding that appellant waived its argument that the appellee's calculation of attorney's fees was not reasonable by failing to object to the calculation when it was explained at trial). Moreover, even if the issue had been preserved, given that Ritika's attorney explained the exact number of hours she worked, the rate she charged, and the specific work that she performed and that Linus failed to cross-examine the attorney regarding her fees or to object to the calculation, we find that there was some evidence supporting the reasonableness of attorney's fees sufficient to justify the award. *See City of Laredo v. Montano,* 414 S.W.3d 731, 737 (Tex. 2013) (reasoning in its determination that there was some evidence to support an award of attorney's fees, that despite knowledge of many of the tasks performed, the appellant failed to cross-examine opposing counsel on attorney's fees).

Linus also contends that Ritika was not entitled to expert witness fees because her expert, Linda James, was not properly qualified and because expert fees are not available in a divorce case.[5] While Linus argued during the bill of review hearing that the expert testimony was not admissible, he did not argue that expert fees were not available during the hearing on the bill of review or in his motion for new trial. As noted above, Ritika's lawyer, during her testimony on attorney's fees, specifically factored expert fees into her calculation of attorney's fees, and Linus declined the opportunity to object either on the basis that expert fees were not available as a matter of law or that James was not properly

---

[5] Notably, this argument relates to whether Ritika was entitled to fees for the expert witness not to whether the actual evidence was properly admitted. Had Linus raised this issue as an argument that the evidence was inadmissible, we would overrule it on the basis that he provided no harm analysis and never argued that it contributed to the rendition of an erroneous judgment or affected his substantial rights. *See* TEX. R. APP. P. 44.2(b) (requiring a harm analysis for non-constitutional error).

21

qualified.  Moreover, Linus did not argue that expert fees were not available in his motion for new trial.  Accordingly, Linus did not preserve these issues for our review.  *See* TEX. R. APP. P. 33.1.

We overrule Linus's fifth and sixth issues.  And because we are affirming the trial court's order granting the bill of review, we overrule Linus's seventh issue in which he requests attorney's fees for the bill of review.

### VIII.   DAMAGES FOR FILING A FRIVOLOUS APPEAL

Ritika asks us to impose sanctions against Linus for filing a frivolous appeal.  *See* TEX. R. APP. P. 45.  Ritika contends that Linus filed this appeal "solely for the purposes of delay rather than in the interest of justice."  Moreover, Ritika asserts that Linus's issues in this appeal are groundless, defined by the Texas Rules of Civil Procedure as having "no basis in law or fact and not warranted by any good faith argument."  TEX. R. CIV. P. 13.

Although imposing sanctions is within our discretion, we will do so only in circumstances that are truly egregious.  *Angelou v. African Overseas Union*, 33 S.W.3d 269, 282 (Tex. App.—Houston [14th Dist.] 2000, no pet.).  If an appellant's argument on appeal fails to convince the court, but has a reasonable basis in law and constitutes an informed, good-faith challenge to the trial court's judgment, sanctions are not appropriate. *General Elec. Credit Corp. v. Midland Cent. Appraisal Dist.*, 826 S.W.2d 124, 125 (Tex. 1991) (interpreting former Texas Rule of Appellate Procedure 84).

 We find no indication that Linus filed this appeal solely for purposes of delay. Moreover, while we have overruled his issues on appeal, we conclude that they had an

arguable basis in law and were argued in good faith.  *See id.*  Accordingly, we decline to impose sanctions.

## IX.    CONCLUSION

We affirm the trial court's judgment.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
25th day of November, 2014.